### CHARLEY MEEKING v. THE STATE.

No. 1846.    Decided June 5, 1912.

Carrying Pistol—Motion for New Trial—Want of Criminal Intent.

Where defendant in his motion for new trial alleged that he had plead guilty of carrying a pistol because he feared further prosecution of theft of a pistol, and further showed that he never owned a pistol, but that he found the one for which he was arrested and carried it home, and that it was the one for which he and the officer had been looking after a negro had thrown it away and had been arrested for carrying same, a new trial should have been granted.

Appeal from the County Court of Smith.   Tried below before the Hon. Jesse F. Odom.

Appeal from a conviction of carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Hanson & Butler,* for appellant.—On question of insufficiency of evidence:   Mangum v. State, 15 Texas Crim. App., 362; Presler v. State, 19 Texas Crim. App., 52; Black v. State, 27 Texas Crim. App., 495; Christin v. State, 37 Texas, 435; Granger v. State, 50 Texas Crim. Rep., 489; Mays v. State, 51 Texas Crim. Rep., 32.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of carrying a pistol.   The statement of facts is a little peculiar.   Appellant plead guilty before the county judge of carrying the pistol.   In the motion for new trial it is shown that appellant plead guilty; that he lived out about five miles below Tyler and near the railroad track; that he did not own a pistol, and never owned one.   That on Saturday evening he had started to Tyler from his home about five o'clock in the afternoon, and had reached a point about half way when he met a negro, whom he subsequently learned was Jesse Horn, and also he subsequently ascertained that Jesse Horn had shortly before shot his wife in the town of Tyler.   Appellant was going north and the negro south.   That directly after he had fallen in with the negro he saw

some white men, one in a buggy driving around a dirt road a short distance from the railroad, and the other walking down the track in the direction of where he and the negro were. One of the white men was Mr. Land, sheriff of the county, who arrested the negro. Just before being arrested the negro threw away his pistol. Appellant and Mr. Land hunted for the pistol but failed to find it. The next morning appellant went back where the negro threw away the pistol, found it, carried it home and placed it over a window in his father's residence. His father testified that appellant went off the next morning, and after being gone a while came back, showed him the pistol which he stated he found near the railroad track. The father directed him to put the pistol up over a window in his room, which the boy did. The father says the reason for doing this was, the boy had told him the circumstances attending the matter, and because he had several children about the place he did not want them to get hold of the pistol. His son placed the pistol over the window as directed by him. The boy further testified that on Monday, after the arrest of the negro on Saturday, and finding the pistol Sunday morning, he was at work picking cotton in his father's field when Mr. Turner, a deputy sheriff, and some other white man, came to where he was and Mr. Turner asked him if he knew anything about the negro Jesse Horn, and talked about Horn's case with appellant. Appellant told him that he had found the pistol on Sunday morning, and that it was at his father's house. Mr. Turner made him go with him to his father's house where they got the pistol in the place indicated by the boy; that he, appellant, remained in the buggy with the other white man while Mr. Turner went in the house and got the pistol. After getting the pistol Turner came out to the buggy and carried him, appellant, to Tyler and put him in jail. Turner told him he had better plead guilty to carrying the pistol, and if he did not he would file another case against him charging him with the theft of the pistol. Appellant said: "I did not want to go to jail, and I plead guilty as Mr. Turner instructed me to do. I did not know what the law was in reference to carrying a pistol, and I did not want to go to jail, so I took Mr. Turner's advice and plead guilty to carrying the pistol. He asked me if I did not carry the pistol from where I found it to my father's house and I said, 'Yes, sir.' Mr. Turner then said, 'You had better plead guilty to one case instead of having two against you,' and I took his advice and plead guilty to carrying the pistol." He says: "I never owned a pistol in my life, nor did I ever carry one, except I found this pistol at this place on the railroad track and carried it home, and as soon as the officer came to see me the following Monday, I told him where it was as above stated." It is also shown by the witness that Turner had threatened to prosecute him for stealing the pistol.

Sheriff Land testified that he arrested the negro about two and a half miles south of Tyler on the I. & G. N. railroad track; that he was

the negro, and was walking along the track with defendant; that he saw the negro Jesse Horn pull a pistol out of his pocket and throw it to one side of the track. He says that he knew it was a pistol that the negro threw away, but he failed to find it; that appellant helped him look for the pistol and they failed to find it; that appellant turned and went towards his home and he brought the negro to Tyler and put him in jail. The sheriff knew nothing about the arrest of defendant for having the pistol. The county judge makes this statement: "H. R. Turner, deputy sheriff of Smith County, brought the defendant to my office. I heard him ask the defendant, before entering my office, what he wanted to do about his case, and the defendant replied that he wanted to plead guilty thereto. Mr. Turner then brought the defendant into my office, and I got the County Court docket, and turned to the case against the defendant on said docket. I stated to him that he was charged with carrying a pistol, and asked him what he wanted to do about it. He stated that he wanted to plead guilty. Thereupon, I took his plea of guilty, which was voluntarily entered, and assessed his punishment at a fine of one hundred dollars." This is a sufficient statement of the facts, and they are uncontroverted.

Under this evidence the motion for new trial ought to have been granted. It is true the defendant plead guilty under the circumstances detailed, but that was coupled with the threats on the part of the officer that if he did not plead guilty he would get two cases against him, one for carrying the pistol, and the other for theft of the pistol. It is evident the boy did not understand the situation and pleaded guilty in order to avoid the extra prosecution for the theft. After hearing this evidence the court should have granted a new trial. Appellant was not guilty of violating the law in finding the pistol and carrying it to his father's residence.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*